**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION**

| | |
|---|---|
| ADAPTIVE CLASSIFICATION TECHNOLOGIES LLC, | |
| *Plaintiff,* | Civil Action No. 1:26-cv-00866 |
| v. | |
| OPEN TEXT INC., | **JURY TRIAL DEMANDED** |
| *Defendant.* | |

## COMPLAINT FOR PATENT INFRINGEMENT

Plaintiff Adaptive Classification Technologies LLC ("ACT" or "Plaintiff"), by and through its attorneys, brings this action and makes the following allegations of patent infringement relating to U.S. Patent No. 10,445,374 (the "'374 patent" or the "patent-in-suit"). Defendant Open Text Inc. ("OpenText" or "Defendant") infringes the patent-in-suit in violation of the patent laws of the United States of America, 35 U.S.C. § 1 *et seq*.

## THE PARTIES

1.      ACT is a Texas limited liability company having its principal place of business at 121 Frederick St., Austin, TX 78704.

2.      Upon information and belief, Open Text Inc. is a corporation organized and existing under the laws of Delaware with its principal place of business at 2440 Sand Hill Road, Suites 301 & 302, Menlo Park, California 94025. Upon information and belief, OpenText conducts business in Texas, including in this District, and maintains an office at 2512 S IH 35, Suite 120, Austin, Texas 78704.

## NATURE OF THE ACTION, JURISDICTION, AND VENUE

3.      This action arises under the patent laws of the United States, Title 35 of the United States Code. Accordingly, this Court has exclusive subject matter jurisdiction over this action under 28 U.S.C. §§ 1331 and 1338(a).

1

4.    This Court has specific personal jurisdiction over OpenText pursuant to due process and/or the Texas Long Arm Statute. OpenText has sufficient minimum contacts with the forum because, inter alia, (i) OpenText has done and continues to conduct business in Texas including in this District, (ii) OpenText has a regular and established place of business in this District, and (iii) OpenText has, directly and through intermediaries, committed and continues to commit acts of patent infringement in Texas including in this District. Moreover, OpenText actively directs its activities to customers located in the State of Texas and this District.

5.    Venue is proper in this district under 28 U.S.C. § 1400(b). Defendant OpenText has an office in the Western District of Texas at 2512 S IH 35, Suite 120, Austin, TX 78704, has transacted business in the Western District of Texas, and has committed acts of infringement in the Western District of Texas.

## THE INVENTORS

6.    The inventors of the '374 patent are Dr. Gordon V. Cormack and Dr. Maura R. Grossman. Each played a pivotal role in the creation and reduction to practice of the patented technology claimed in the '374 patent.

7.    Dr. Gordon V. Cormack earned his B.Sc., M.Sc., and Ph.D. in computer science from the University of Manitoba in 1977, 1978, and 1981, respectively. After graduating, Dr. Cormack taught at McGill University before joining the University of Waterloo in 1983. These educational experiences provided the scholarly foundation for his pioneering work in compression, search, and e-discovery.

8.    Over a four-decade career, Dr. Cormack has published more than 100 peer-reviewed papers and co-authored the graduate textbook Information Retrieval: Implementing and Evaluating Search Engines (MIT Press, 2010). Among his most acclaimed papers is his 2008 paper titled "Novelty and Diversity in Information Retrieval Evaluation," which received the 2019 ACM SIGIR (Special Interest Group on Information Retrieval) Test-of-Time Award.

9.      Dr. Cormack has shaped benchmark-setting initiatives as a long-time program-committee member of NIST's Text Retrieval Conference, coordinating the Spam (2005–07), Legal (2010–11), and Total Recall (2015–16) tracks, and he served as president of the Conference on Email and Anti-Spam.

10.     In addition to advancing the research field and the state of the art, Dr. Cormack also helped guide the next generation of innovators. For over a decade, Dr. Cormack coached the University of Waterloo's ACM International Collegiate Programming Contest teams, guiding them to the World Finals every year of his tenure and helping them capture the World Championship in 1999 (along with North American titles in 1998 and 2000).

11.     Dr. Cormack is the co-inventor of both Dynamic Markov Compression (DMC) and Continuous Active Learning® (CAL®). His and Dr. Grossman's research on technology-assisted review has been cited by courts in the United States, Ireland, and the United Kingdom when approving predictive-coding workflows.

12.     Dr. Cormack is currently professor emeritus at the David R. Cheriton School of Computer Science at the University of Waterloo and continues to actively consult in the fields of machine learning and AI-assisted review.

13.     Dr. Maura R. Grossman, Dr. Cormack's peer and co-inventor, is a research professor at the University of Waterloo's Cheriton School of Computer Science, cross-appointed to the School of Public Health Sciences, and the principal of her own consulting business. She also holds an adjunct post at Osgoode Hall Law School and has taught e-discovery at Columbia and Georgetown.

14.     Dr. Grossman earned an A.B., magna cum laude, from Brown University, followed by her M.A. and Ph.D. in Psychology from the Gordon F. Derner Institute of Advanced Psychological Studies at Adelphi University. She later obtained her J.D., magna cum laude and Order of the Coif, from Georgetown University Law Center, where she served as Executive Notes & Comments Editor of the Georgetown Law Journal. These multidisciplinary

3

credentials—combined with her research professorship in computer science—laid the foundation for her pioneering contributions to technology-assisted review and electronic discovery.

15. For seventeen years, Dr. Grossman was Of Counsel at Wachtell, Lipton, Rosen & Katz, where she led e-discovery and information-governance strategy for Fortune 100 clients.

16. Dr. Grossman's landmark 2011 article "Technology-Assisted Review in E-Discovery Can Be More Effective and More Efficient than Exhaustive Manual Review," co-authored with Dr. Cormack, is a canonical guide for technology-assisted review, providing empirical proof that predictive coding can outperform manual review. It is now a staple citation in judicial opinions worldwide.

17. Courts frequently appoint Dr. Grossman as a special master or discovery expert— most notably in the Southern District of New York—to design and monitor TAR protocols, and she co-led NIST's TREC Legal (2010–11) and Total Recall (2015–16) tracks, setting industry benchmarks.

18. Like Dr. Cormack, Dr. Grossman also played a pivotal role in guiding the next generation of innovators. In 2019, she was named Director of Women in Computer Science at Waterloo, and she taught the interdisciplinary course "Artificial Intelligence: Law, Ethics, and Policy."

19. Dr. Grossman has received numerous awards for her scholarship and contributions to the field, including the American Bar Association's 2016 "Legal Rebel" designation, inclusion in the 2017 Fastcase 50 list of legal innovators, and recognition by Who's Who Legal (2020) as a National and Global e-Discovery Leader.

20. In addition to the above accolades, Dr. Cormack and Dr. Grossman are named inventors on almost a dozen patents (the "Cormack/Grossman patents") in the fields of machine learning, technology-assisted document review, and active document processing.

21. These patents have been cited in hundreds of U.S. patents and published patent applications as prior art before the United States Patent and Trademark Office. Companies whose patents cite the Cormack/Grossman patents include:

4

- Microsoft Corporation
- Open Text Corporation
- International Business Machines Corporation
- Nuix North America
- Canon Inc.
- Ford Motor Company
- Oracle Corporation
- SAP SE
- AT&T Inc.
- Fujitsu Limited
- Xerox Corporation
- Kyocera Corporation
- Nokia Corporation
- Relativity ODA LLC
- Bank of America Corporation

**TECHNOLOGY BACKGROUND**

22.     Electronic discovery ("e-discovery") traces its roots to early efforts to process computer-generated evidence in the 1960s. The modern era began when full-text retrieval systems—such as Concordance—debuted in mid-1980s, allowing lawyers to keyword-search digital pages rather than flip through boxes of paper records.

23.     Early milestones include the 1970 amendment to Federal Rule 34 authorizing discovery of "electronic data compilations," and the creation of the Electronic Discovery Reference Model (EDRM) in 2005, which described the now-familiar stages of preservation, processing, review, and production.

24.     By the late 1990s, everyday email use and network backups had multiplied data volumes, setting the stage for Judge Shira Scheindlin's *Zubulake* rulings (2003–2005). *See Zubulake v. UBS Warburg LLC*, 229 F.R.D. 422 (S.D.N.Y. 2004). Those decisions underscored that litigants must preserve and produce relevant digital documents, including email, even when they reside on difficult-to-restore backup tapes—highlighting the need for software that could search, de-duplicate, and review massive collections defensibly.

25.     The 2006 amendments to the Federal Rules of Civil Procedure expressly addressed e-discovery, defining "electronically stored information" ("ESI") in Rules 16, 26, 33,

5

34, 37, and 45 and introducing Rule 26(b)(2)(B), which excuses production of ESI that is "not reasonably accessible because of undue burden or cost." Those amendments helped drive demand for review platforms—such as Concordance, Summation, IPRO, and early versions of Relativity—that converted native files to TIFF images, paired them with load files, and drove attorney review through static keyword hit lists.

26.     While those systems were sufficient for their time, they were quickly overwhelmed by the volume of data expected to be processed and reviewed.

27.     From the mid-1980s to the early 2000s, the cost to store data fell by orders of magnitude, and corporate data volumes increased commensurately—making purely linear keyword review untenable or, at best, unreasonably expensive for many matters.

28.     Vendors introduced concept-clustering, near-duplicate detection, and email threading. Yet reviewers still had to craft broad search strings and perform manual quality control, leaving many responsive documents undiscovered and review costs spiraling. These pressures led to experimentation with machine-learning techniques to classify documents more efficiently—the seeds of technology-assisted review ("TAR").

29.     In 2011, Dr. Maura R. Grossman and Dr. Gordon V. Cormack published research demonstrating that supervised learning could achieve higher recall than exhaustive manual review at a fraction of the effort. Within a year, Magistrate Judge Andrew Peck cited that research in *Da Silva Moore v. Publicis Groupe*—an early federal opinion approving "predictive coding." See 287 F.R.D. 182 (S.D.N.Y. 2012).

30.     Early "TAR 1.0" implementations commonly used sizeable seed sets, staged training rounds, and often employed curated control samples to measure recall. In such workflows, a model would be trained on an initial set of documents, then applied to remaining documents in the collection; models were typically updated only after additional rounds of training.

31.     Commentators later contrasted TAR 1.0 with TAR 2.0 methods that provided more flexible, continuous learning.

32.     In 2014–2015, Drs. Cormack and Grossman introduced Continuous Active Learning® (CAL®)—a protocol that retrains as coding progresses and dynamically re-ranks the corpus. Peer-reviewed evaluations beginning with the SIGIR study—and extended in follow-up work—reported efficient, high-recall results using continuous learning.[1]

33.     CAL®'s reported effectiveness spurred rapid commercial adoption. Major platforms introduced continuous-learning capabilities, and cloud-based tools highlighted speed and machine-learning-driven culling as key advantages.

34.     In 2019, industry bodies such as EDRM published TAR guidelines recognizing continuous-learning approaches, including CAL®, as widely accepted for high-recall workflows.

35.     Today, TAR platforms often layer continuous learning with concept analytics, communication mapping, and (increasingly) summarization tools, enabling counsel to interrogate large digital repositories efficiently.

### THE PATENT-IN-SUIT - U.S. PATENT NO. 10,445,374

36.     U.S. Patent No. 10,445,374, entitled "Systems and Methods for Conducting and Terminating a Technology-Assisted Review," was filed on June 17, 2016 and claims priority to June 19, 2015. The '374 Patent is valid and enforceable. A true and correct copy of the '374 Patent is attached hereto as Exhibit A.

37.     The '374 Patent discloses systems and methods for determining when to terminate a classification process such that classifiers generated during iterations of the classification process accurately classify documents in a collection (e.g., as relevant or non-relevant) and achieve high quality "within a certain level of assurance," i.e., high reliability. Ex. A, 4:8–17.

38.     The '374 Patent addresses modern ESI scale by beginning with a target set (T) of documents identified as relevant. As the specification explains:

> "In step **1020**, relevant documents are identified in a document collection to create a target set T. Following or during identification of the target set T, an indication of the documents in the target set T may be received. In certain embodiments, documents in T are identified by selecting documents at random

---

[1] CAL® is often referred to as TAR 2.0.

from the document collection, presenting the document to one or more reviewers, and then adding the document to the set T if the reviewer indicates the document is 'relevant.'"

Ex. A, 6:63-7:14

39. Once the target set T exists, the '374 Patent directs the machine to "execute the classification process that enables training of a classifier using documents in the target set …." Ex. A, 18:33–34.

40. The patent then specifies that the classification process "utilize[s] a second iterative search strategy which does not distinguish between documents in the target set and documents in the document collection to classify documents in the document collection." Ex. A, 18:35–39.

41. While the specification does not limit the second strategy to any single implementation, it expressly contemplates that it may be "a TAR process" and, in particular, "a CAL approach which retrieves and/or classifies the most likely relevant documents from the collection." Ex. A, 7:26–29.

42. Finally, the '374 Patent requires that the workflow "terminate the classification process based upon a comparison between the results of the second search strategy and a characteristic of the target set … wherein the classification process achieves a target level of recall with a certain probability upon termination." Ex. A, 18:40–45.

43. Finally, the '374 Patent requires that the workflow "terminate the classification process based upon a comparison between the results of the second search strategy and a characteristic of the target set … wherein the classification process achieves a target level of recall with a certain probability upon termination." Ex. A, 18:40–45.

8



FIG. 1

**COUNT I**
**INFRINGEMENT OF U.S. PATENT NO. 10,445,374**

44.    The preceding paragraphs are reincorporated by reference as if fully set forth herein.

45.    The '374 patent is valid and enforceable.

46.    ACT is the owner and assignee of all rights, title, and interest in the '374 patent, including the rights to grant licenses, to exclude others, and to recover past damages for infringement of that patent.

9

47.     Upon information and belief, OpenText designs, makes, uses, sells, imports and/or offers for sale in the United States the OpenText Axcelerate eDiscovery Platform, including Axcelerate TAR 2.0, Predictive Search, and related machine-learning document-review functionality (the "Accused Instrumentality" or the "OpenText eDiscovery Platform").

48.     Upon information and belief, OpenText's eDiscovery Platform comprises a technology-assisted review system that uses machine learning, including Axcelerate TAR 2.0, continuous active learning, and Predictive Search, to classify documents through predictive ranking and comparison of known relevant documents against the entire corpus. OpenText publicly describes its eDiscovery solution as offering technology-assisted review and continuous active learning to rapidly surface relevant documents and reduce manual review, further describes Axcelerate TAR 2.0 as learning from reviewer coding decisions in real time to deliver the most relevant results in the shortest amount of time, and describes Predictive Search as allowing users to compare documents known to be relevant against the entire corpus to quickly surface similar documents. *See, e.g.,*

OpenText eDiscovery solutions have a long history of incorporating artificial intelligence (AI) and advanced analytics to dramatically improve review efficiency and lower costs while ensuring defensibility of process. For more than 15 years we have been the leaders in Technology Assisted Review (TAR) for eDiscovery. While first generation TAR (TAR 1.0) relies on subject matter experts to train the algorithm on a sample data set before review begins, second generation TAR (TAR 2.0) allows the review to commence immediately, saving both time and money. OpenText Axcelerate TAR 2.0, featuring continuous active learning (CAL), learns from all reviewer coding decisions in real time to deliver the most relevant results in the shortest amount of time. Our TAR 2.0 is also paired with a unique contextual diversity algorithm that eliminates the risk of missing relevant documents by surfacing documents from contextually diverse pockets of data. An intuitive TAR interface and workflows reduce learning curves so your team can uncover the most relevant evidence without delay, and visualization tools allow project managers to easily track the progress of review and accurately estimate time to completion.

https://blogs.opentext.com/whats-new-in-opentext-ediscovery/

| Predictive filters | Find relevant data faster with predictive filters that learn from human review decisions to use the search terms and parameters most likely to uncover valuable insights. These can include which content stores are probable sources of relevant content, what content is most likely to be privileged, and which custodians are most likely to have relevant documents. |
| --- | --- |
| Predictive search | "Find more like me" with TAR functionality on the fly, without any workflow or sampling requirements. Compare documents known to be relevant against the entire corpus or execute search queries and use selected results to find other documents with similar content. |

https://www.opentext.com/media/product-overview/opentext-ediscovery-po-en.pdf

49.    Upon information and belief, the OpenText eDiscovery Platform comprises at least one computing device having a processor and physical memory, the physical memory that stores instructions.

50.    Upon information and belief, the OpenText eDiscovery Platform includes instructions that, when executed, cause the system to receive an identification of a target set of documents in a collection—namely, documents identified as relevant during an initial search-and-review and/or coding step—and to store and use that identification in later technology-assisted-review operations. For example, OpenText publicly explains that Axcelerate TAR 2.0 can be initiated by finding as many relevant documents as possible and feeding them to the system as initial seed documents. OpenText also describes Predictive Search as comparing documents known in advance to be highly relevant, or best exemplars uncovered in initial search results, against the entire corpus to surface similar documents, and OpenText's Axcelerate training materials further show users using a previously reviewed relevant set as the basis for a predictive search. *See, e.g.*,

3. **Initial seeding.** The user can initiate a TAR 2.0 protocol with as many, or as few, documents as desired. One of the best ways to initiate ranking is to start by finding as many relevant documents as possible and feed them to the system to help train the algorithm or create a synthetic document to use as an initial seed. The user can even begin without any seed documents—just start reviewing, and the algorithm will learn based on every relevant and non-relevant document the user codes. Random sampling is generally not recommended for the purpose of initial training, since it is it is not necessarily an efficient means of finding relevant documents and is particularly problematic for low richness collections.

https://www.opentext.com/media/white-paper/choosing-the-right-technology-assisted-review-protocol-to-meet-objectives-wp-en.pdf

11



Axcelerate's Predictive Search in action comparing an exemplar document against the corpus

https://blogs.opentext.com/whats-new-in-opentext-axcelerate-cloud-edition-ce-20-2/; *see also*, https://videos.opentext.com/watch/86YSwuqcsn5HGC95Gyy4Pw

51. Upon information and belief, the OpenText eDiscovery Platform executes a classification process that trains a classifier using reviewer-identified target-set documents and, through Axcelerate TAR 2.0 and continuous active learning ("CAL"), applies that classifier iteratively across the document collection to rank and classify documents based on predicted relevance. OpenText publicly explains that, with CAL, the algorithm "learns and improves continuously throughout the review process," that "every review decision, from the first to the last, is used to train and improve the algorithm," and that the algorithm "continuously ranks the entire document collection," feeding the most likely relevant documents to reviewers while adjusting and adapting throughout the review process. *See, e.g.*,

A newer protocol, continuous active learning (CAL), is central to the second generation of TAR protocols, known as TAR 2.0. With CAL, the algorithm learns and improves continuously throughout the review process. Instead of a preliminary training phase, the human review team simply begins review while the algorithm observes those decisions and adjusts its criteria for determining relevance. Every review decision, from the first to the last, is used to train and improve the algorithm, ensuring that the most likely relevant documents are being ranked toward the top of the list, so they can be preferentially made available to reviewers.

12

> Rather than using an SME, a control set or a seed set, with CAL the human review team simply begins review while the algorithm learns in the background, analyzing tags and developing its sense of which documents may be relevant. The more comprehensive the initial relevant documents, the faster the algorithm will learn. The algorithm continuously ranks the entire document set, feeding more and more relevant documents to the human review team and continuously learns, adjusting and adapting throughout the entire review process.

https://www.opentext.com/media/white-paper/choosing-the-right-technology-assisted-review-protocol-to-meet-objectives-wp-en.pdf

52. Upon information and belief, OpenText terminates—or enables users to terminate—the classification process when, in Axcelerate TAR 2.0 and Predictive Search, comparison of known relevant documents against the entire corpus and the platform's ongoing review-progress reporting indicate that the desired recall objective has been reached and it is time to stop. OpenText publicly explains that Predictive Search compares documents known in advance to be highly relevant, or best exemplars uncovered in initial search results, against the entire corpus and can be used as a quality-control tool toward the end of review to assess whether the final discovery set is inclusive of all relevant content. OpenText further explains that, in TAR 2.0, "no control set is required," that the user "continues until the desired recall rate is reached," and that progress can be tracked "to see when it is time to stop." OpenText also explains that success in such classification workflows is measured by balancing recall and precision, with a target recall level (e.g., 80 percent recall) as a common standard. *See*, *e.g.*,

13



### "Find more like me" with Predictive Search

Axcelerate's new Predictive Search provides a "find more like me" capability to easily home in on relevant content. Documents that are known in advance to be highly relevant, or the best exemplars uncovered in initial search results, are compared against the entire corpus to quickly surface documents with similar content. Predictive Search can also be used as a QC tool to quickly assess whether the final discovery set is inclusive of all relevant content.

Axcelerate's Predictive Search in action comparing an exemplar document against the corpus

https://blogs.opentext.com/whats-new-in-opentext-axcelerate-cloud-edition-ce-20-2/; *see also*, https://videos.opentext.com/watch/86YSwuqcsn5HGC95Gyy4Pw; *see also* https://www.opentext.com/assets/documents/en-US/pdf/opentext-pp-the-efficiency-imperative-en.pdf

Here is how the TAR 2.0 protocol works:

1. **Collection.** As with TAR 1.0, the first step in the TAR 2.0 protocol is to amass and process a collection of documents, making the features of the documents available to the TAR algorithm. However, because CAL continuously ranks the entire document collection and training takes place throughout the review, it is not necessary to gather the entire collection before review begins. Engineering documents will simply be folded into the collection of sales documents and ranked based on the features of every document coded to that point in time. And, if they are relevant, the engineering documents will eventually be ranked near the top of the list and come up for review in due course.

2. **No control set required.** A control set is not necessary and not used in a TAR 2.0 protocol.

3. **Initial seeding.** The user can initiate a TAR 2.0 protocol with as many, or as few, documents as desired. One of the best ways to initiate ranking is to start by finding as many relevant documents as possible and feed them to the system to help train the algorithm or create a synthetic document to use as an initial seed. The user can even begin without any seed documents—just start reviewing, and the algorithm will learn based on every relevant and non-relevant document the user codes. Random sampling is generally not recommended for the purpose of initial training, since it is it is not necessarily an efficient means of finding relevant documents and is particularly problematic for low richness collections.

https://www.opentext.com/media/white-paper/choosing-the-right-technology-assisted-review-protocol-to-meet-objectives-wp-en.pdf

14

> 4. **Begin review.** The review team can start immediately; there is no need for a subject matter expert to review any documents whatsoever. Reviewers will quickly begin seeing batches containing mostly relevant documents.
>
> 5. **Quality control.** As the review progresses, the subject matter expert, such as the senior attorney, can cull a small percentage of the documents to ensure that the reviewers are aligned with the proper scope of relevance. An effective TAR system will include a quality control algorithm that locates and presents those documents that are most likely tagged incorrectly.
>
> 6. **Finish.** The user continues until the desired recall rate is reached. They can track progress as the review progresses to see when it is time to stop.

https://www.opentext.com/media/white-paper/choosing-the-right-technology-assisted-review-protocol-to-meet-objectives-wp-en.pdf

53.     Upon information and belief, OpenText has directly infringed and continues to directly infringe the '374 Patent by, among other things, making, using, selling, offering to sell, and/or importing in the United States the OpenText Axcelerate eDiscovery Platform, including Axcelerate TAR 2.0, Predictive Search, and related machine-learning document-review functionality, during the term of the '374 Patent. See 35 U.S.C. § 271(a).

54.     Upon information and belief, by making, using, testing, offering for sale, importing, and/or selling the OpenText Axcelerate eDiscovery Platform, OpenText has injured ACT and is liable to ACT for directly infringing one or more claims of the '374 Patent, including at least claim 1, pursuant to 35 U.S.C. § 271(a). The OpenText Axcelerate eDiscovery Platform meets each and every limitation of at least claim 1 as alleged herein.

55.     Upon information and belief, OpenText has had knowledge of the '374 Patent since at least March 26, 2026, when it received a letter identifying the '374 Patent, identifying the OpenText Axcelerate eDiscovery Platform, including Axcelerate TAR 2.0, Predictive Search, and related machine-learning document-review functionality, and notifying OpenText that such functionality infringes the '374 Patent.

56.     Upon information and belief, OpenText has, at least since March 26, 2026, indirectly infringed and continues to indirectly infringe the '374 Patent by actively inducing infringement under 35 U.S.C. § 271(b).

15

57.     At least since March 26, 2026, upon information and belief, OpenText has had knowledge of the '374 Patent and knowledge that the ordinary, intended, and instructed use of the OpenText Axcelerate eDiscovery Platform, including Axcelerate TAR 2.0, Predictive Search, and related machine-learning document-review functionality, infringes the '374 Patent.

58.     At least since March 26, 2026, upon information and belief, OpenText has intended to cause and has caused infringement by third-party customers and end users of the OpenText Axcelerate eDiscovery Platform. OpenText publishes product documentation, product descriptions, blog posts, white papers, videos, and other training materials instructing customers and end users to use the accused functionality, including by identifying relevant documents and review criteria, using Axcelerate TAR 2.0 and continuous active learning to learn from reviewer coding decisions and iteratively rank and classify documents across a document collection, using Predictive Search to compare documents known to be relevant against the entire corpus and assess whether the final discovery set is inclusive of all relevant content, and using the platform's review-progress, quality, and completion metrics to determine when review can be concluded. By providing these instructions and training, OpenText has specifically intended to and does encourage, instruct, and lead customers and end users to use the OpenText Axcelerate eDiscovery Platform in a manner that directly infringes one or more claims of the '374 Patent, including at least claim 1.

59.     After receiving ACT's March 26, 2026 notice letter, OpenText continued to host and circulate the documentation described above and to promote the accused features, demonstrating at least reckless disregard of ACT's patent rights.

60.     Despite having notice of its infringement, OpenText has continued to make, use, test, offer for sale, import, and/or sell the OpenText Axcelerate eDiscovery Platform in a manner that infringes the '374 Patent. OpenText's conduct is willful, and ACT is therefore entitled to enhanced damages under 35 U.S.C. § 284.

61.     As a result of OpenText's infringement of the '374 Patent, ACT has suffered monetary damages and seeks no less than a reasonable royalty for the use made of the invention

by OpenText, together with pre- and post-judgment interest and costs as fixed by the Court. See 35 U.S.C. § 284.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff ACT respectfully requests that this Court enter:

1. A judgment in favor of ACT that OpenText has infringed the '374 Patent, either literally or, in the alternative, under the doctrine of equivalents;

2. A judgment that OpenText's infringement of the '374 Patent is willful;

3. An award of damages resulting from OpenText's acts of infringement in accordance with 35 U.S.C. § 284;

4. A judgment that this case is exceptional under 35 U.S.C. § 285 and awarding ACT its reasonable attorneys' fees, costs, and expenses incurred in this action;

5. A judgment and order requiring OpenText to provide accountings and to pay supplemental damages, including, without limitation, pre-judgment and post-judgment interest; and

6. Any and all other relief to which ACT may be entitled.

## JURY TRIAL DEMANDED

Pursuant to Federal Rule of Civil Procedure 38(b), ACT requests a trial by jury of all issues so triable by right.

Dated:  April 7, 2026                    Respectfully Submitted,

/s/ *Bradford J. Black*
Bradford J. Black
Texas Bar No. 24086243
bblack@bradfordblack.com
**BRADFORD BLACK P.C.**
500 W. 2nd Street, Suite 1900
Austin, TX 78701
Telephone: (415) 813-6211
Facsimile: (415) 813-6222

*Attorneys for Plaintiff*
ADAPTIVE CLASSIFICATION
TECHNOLOGIES LLC

17